Sam G. **HARRISON,** Appellant,

v.

**BASS ENTERPRISES PRODUCTION CO.,** et al., **Appellees.**

No. 13–92–582–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 3, 1994.

Susan Kelley–Claybrook, James E. Wren, Haley, Davis, Wren, Bristow & Rasner, Waco, Edwin P. Horner, Waco, for appellant.

Ann B. House, Robert C. Grable, Kelly, Hart & Hallman, Fort Worth, John B. McFarland, Dan Moody, Jr., Graves, Dougherty, Hearon & Moody, Austin, Houston Munson, Gonzales, Larry W. Kimes, R. John Mosley, Austin, for appellees.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

Harrison sued Bass Enterprises Production Company (Bass) and the Rengers for unpaid oil and gas royalties. The trial court rendered summary judgment against Harrison on grounds that all of his claims were time-barred. On appeal, the parties agree that a four-year statute of limitations applies to the current action. However, they dispute the application of the discovery rule. The trial court refused to apply the discovery rule and alternatively held that the summary judgment evidence showed that Harrison was in possession of facts which put him on notice of his cause of action more than four years before he filed suit. Harrison claims that the discovery rule applies and that material fact issues exist on the question of fraudulent concealment. We affirm. We briefly review the facts.

Back in 1944, Harrison purchased ½ of the royalties to property in Lavaca County from Harvey and Bernice Renger. The deed covered five separate tracts, including the "Second Tract," the land containing the wells disputed here. The Rengers since conveyed portions of their remaining royalty interest to their children, appellees Harvey Renger, Jr., Wayne Renger, and the Wayne Renger Trust. Harrison sold and conveyed ½ of his nonparticipating royalty interest in the Second Tract. Thus, Harrison still retains ¼ of ⅛ royalty interest.

Bass has a working interest in, and is the operator, on the Second Tract. In 1971 the Second Tract was pooled into the Neuhaus Unit. Harrison was never asked to ratify the pooling agreement. Bass then drilled the No. 2 well which produced oil and gas from 1973–1983, and the No. 3 well, producing from 1982–1986. Although Harrison's deed gave him a royalty interest in that production, no royalties were ever paid him.[1] Bass disseminated division orders which showed the Rengers as the only royalty payee. The Rengers signed the incorrect division orders and for many years received all of Bass's royalty payments from production from those wells. Harrison received nothing. Harrison now sues Bass for the improperly paid royalties. The question we must resolve is whether Harrison's claims are barred by the statute of limitations.

▮ In a summary judgment case, the movant bears the burden of showing its entitlement to judgment as a matter of law.

---

1. Prior to filing, the parties settled a portion of the disputed royalties, leaving in dispute only the royalties arising from production prior to February 1987 from the two wells on the Renger's 63.3 acre tract. produced before January 1983.

*MMP Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986); *Pooley v. Seal,* 802 S.W.2d 390, 392 (Tex.App.—Corpus Christi 1990, writ denied); *Denison v. Haeber Roofing Co.,* 767 S.W.2d 862, 864 (Tex.App.—Corpus Christi 1989, no writ). When a defendant moves for summary judgment based on an affirmative defense, it is his burden to prove conclusively all elements of the affirmative defense as a matter of law and to preclude all genuine issues of material fact. In reviewing the propriety of the summary judgment, we indulge every reasonable inference in favor of the nonmovant. *Pooley,* 802 S.W.2d at 392.

■ Harrison pleaded the following causes of action against Bass: breach of contract for failure to pay royalty, breach of statutory duty to pay royalty,[2] breach of fiduciary duty, breach of good faith and fair dealing, negligence and negligence per se, and fraud. Bass contends that Harrison's causes of action sound only in contract. We agree. As the Supreme Court of Texas has explained:

> If the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.

*Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *Jim Walter Homes Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986).

2. Section 91.402 of the Texas Natural Resources Code states:

> (a) The proceeds derived from the sale of oil or gas production from an oil or gas well located in this state must be paid to each payee by payor on or before 120 days after the end of the month of first sale of production from the well. After that time, payments must be made to each payee on a timely basis according to the frequency of payment specified in the lease

We hold that Harrison's claims apply only to the subject of the contract. The only damages Harrison claims are the unpaid royalties—the subject matter of the contract. Thus, the actions against Bass sound only in contract. The trial court did not err in entering summary judgment against Harrison on his tort claims against Bass because they merely recast the contract claim. We address the issue of fraud separately.

■ Harrison pleaded fraud against Bass for Bass's failure to disclose its own mistake in title work, which led it to send and pay incorrect division orders to the Rengers and others. In order to uphold the summary judgment on fraud, Bass had the burden to prove that there were no material issues of fact on at least one element of a cause of action for fraud. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). The elements of fraud are: (1) a material misrepresentation or omission when there is a duty to speak, (2) when the defendant knew the statement was false or made the statement recklessly without any knowledge of its truth, (3) the defendant intended the plaintiff to rely upon the statement, (4) that the plaintiff relies upon the statement (5) to his detriment. *See Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977); *Moore & Moore Drilling Company v. White,* 345 S.W.2d 550, 555 (Tex.Civ.App.—Dallas 1961 writ ref'd n.r.e.).[3]

We find no evidence of any affirmative statement or breach of any duty to disclose by Bass designed to induce Harrison's detrimental reliance. Harrison produced summary judgment evidence that Bass persuaded Harrison to ratify a pooling agreement during the time Bass knew of its own nonpayment of Harrison's missing royalty interest. Harrison argues that, despite Bass's

> or other written agreement between the payee and payor.
>
> Tex.Nat.Res.Code Ann. § 91.402 (Vernon 1993).

3. We note that fraudulent concealment is not a cause of action itself. An assertion of fraudulent concealment merely estops a party from using the statute of limitations to defeat the claim if that party has concealed from the plaintiffs facts that would put the plaintiff on notice that he had a cause of action.

knowledge, it did not disclose the outstanding royalty to Harrison so that it could obtain the pooling ratification. Assuming without deciding that Harrison's fraud claim would encompass a claim that Bass fraudulently induced the pooling agreement ratification, Harrison presented no summary judgment evidence that he would not have ratified the pooling agreement regarding other property had Bass informed him of the unpaid royalty on the Renger tract. Harrison did produce some evidence that his ratification of the Wynne unit was conditioned on the answer to Harrison's inquiry of whether there had been production on the Renger tract. However, Harrison would have to have plead that Bass fraudulently induced the *Wynne* ratification, which he did not.

 Harrison also argues fraudulent concealment of his claim by the appellees. Any claim that Bass fraudulently concealed the unpaid royalty does not constitute a separate cause of action against Bass. We hold that a claim of fraudulent concealment regarding Bass fails because Harrison did not demonstrate a relationship of trust between he and Bass that would have created a duty on Bass's part to disclose the existence of a cause of action. *See Owen v. King,* 130 Tex. 614, 111 S.W.2d 695, 697–698 (1938). Moreover, we hold that Harrison was on notice of his cause of action in May of 1981. The appellees produced evidence of a production report which was in Harrison's files and which indicated continuous production on the Renger tract on May 4, 1981. We hold that such information was enough to put Harrison on notice that his interest had been perpetuated by production. An inspection of his own records would have shown that he was receiving no royalty payments from Bass.

 The estoppel effect of fraudulent concealment ends when the party learns of facts or circumstances that would cause a reasonable person either to be aware of the existence of a cause of action or would cause a reasonable person to make inquiry that would lead to the discovery of the cause of action if pursued. *Nash v. Carolina Cas. Ins. Co.,* 741 S.W.2d 598, 602 (Tex.App.— Dallas 1987, writ denied). No issue of fact exists as to fraudulent concealment. Harri-

son's action against Bass sounds in contract only, and we must determine whether the trial court erred in granting summary judgment based upon the statute of limitations.

 Bass and the Rengers moved for summary judgment and so bore the burden of demonstrating that there were no issues of material fact and that they were entitled to summary judgment on the basis of limitations for each of the causes of action Harrison plead. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). When the discovery rule is implicated, the summary judgment movant bears the burden to negate the discovery rule by proving as a matter of law that there is no issue of material fact concerning when the plaintiff discovered or should have discovered the cause of action. *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex. 1977); *Pooley,* 802 S.W.2d at 393. Summary judgment was properly granted only if Bass presented summary judgment evidence to prove when the cause of action accrued and that the applicable statute of limitations passed before the plaintiff filed suit. The applicable statute of limitations in a contract action is four years. TEX.CIV.PRAC. & REM. CODE ANN. §§ 16.004; 16.051 (Vernon 1986 & Supp.1994). Ordinarily, the cause in a breach of contract case accrues when the breach occurs. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). Bass produced summary judgment evidence showing that it pays royalties on oil and gas in the second month after production and that such practice is common in the oil and gas industry. Thus, Harrison's claims for unpaid royalty "accrued" monthly as oil and gas are produced and the agreed royalty is not paid. It is undisputed that Bass paid Harrison all of his share of royalty, undiluted by pooling, back to January of 1983—four years prior to when Bass discovered the mistaken payments. Harrison's claims relate to unpaid royalty from production between February of 1973 to December of 1982. Thus, the most recent of these claims accrued in February of 1983, more than eight years before Harrison filed suit in February of 1991.

 Harrison claims that the discovery rule is implicated in this case. The crux

of his appeal is the contention that the discovery rule applies as a *general proposition* in *any* case where the factual circumstances surrounding the injury make it difficult or impossible for the plaintiff to ascertain his injury. *Kelley v. Rinkle*, 532 S.W.2d 947, 948 (Tex.1976). Although no case in Texas has explicitly applied the discovery rule to a case in which a nonparticipating royalty interest owner seeks to recover unpaid royalty from the lessee/operator and his grantor, Harrison cites numerous cases in which he alleges the courts have applied the discovery rule to breach of contract claims. All but four of his cases involve special relationships, such as attorney-client, which justified the application of the discovery rule. The remaining cases which do not explicitly involve fiduciary relationships are of ambiguous precedential value. *See Precision Sheet Metal Mfg. Co, Inc. v. Yates*, 794 S.W.2d 545, 550 (Tex. App.—Dallas 1990, writ denied); *El Paso Associates, Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 20 (Tex.App.—El Paso 1990, no writ); *Rothman v. Gulf Investment Corp.*, 497 S.W.2d 792, 795 (Tex.Civ.App.—Beaumont 1973), *rev'd on other grounds*, 506 S.W.2d 856 (Tex.1974); *Maddox v. Oldham Little Church Foundation*, 411 S.W.2d 375, 381 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.). They are cases from other courts of appeals and are not binding authority on this court. In addition, recent authority from the Supreme Court of Texas belies Harrison's allegation that the discovery rule applies in *any case* in which the discovery of the cause of action is difficult. *Trinity River Authority v. URS Consultants, Inc.*, 889 S.W.2d 259, 262-63 (Tex.1994). The Court reemphasized the general rule that a cause of action accrues as soon as the defendant's wrongful act effects an injury and that the Supreme Court of Texas must explicitly adopt the discovery rule before it is applicable to a specific cause of action. It is undisputed that the Supreme Court of Texas has not yet adopted the discovery rule when there has been a breach of the agreement to pay royalty in circumstances such as these. The courts of appeals have applied the discovery rule by balancing the following factors:

1) the nature of the plaintiff's case and the type of evidence required to establish and defend the claim;
2) the length of the limitations period in question and the wrongful act's susceptibility to discovery within that period;
3) the susceptibility of cases to fraudulent prosecution if limitations is tolled.

*Precision Sheet Metal Manufacturing v. Yates*, 794 S.W.2d 545, 551 (Tex.App.—Dallas 1990, writ denied). Suits for recovery of royalties will primarily involve documentary evidence. Evidence of production is available through public records and through mandatory filings with the Texas railroad commission. Such considerations weigh against the susceptibility of fraudulent or stale suits. However, they also indicate that the cause of action was discoverable by the plaintiff within the limitations period.

The undisputed evidence shows that Harrison had in his land file a memo indicating production on the Renger tract, which was part of Harrison's nonparticipating royalty interest, as early as May 4, 1981. Facts were available to Harrison showing production, and an inspection of his own accounts would have revealed no royalty payments from Bass. Thus, facts sufficient to alert Harrison to the existence of his cause of action were available to him as early as May of 1981. Harrison did not file suit until February of 1991, ten years later. As Harrison points out, the practice in the oil and gas industry is that the lessee prepares the division orders and a nonparticipating royalty interest owner may never know of his entitlement until these division orders are properly prepared and sent out. Still, the nonparticipating royalty interest owner is a party to a contract and is charged with the duty of protecting his own interests. The summary judgment evidence shows that the original grantors creating the interests at issue have died, that Mr. Harrison is incompetent, and that the dispute over royalties reaches back over twenty years. This is exactly the type of case to which statutes of limitation were designed to apply. We hold that the trial court did not err in granting summary judgment against Harrison on all of his claims against Bass. We overrule point one.

With regard to the Rengers, we must also determine whether the discovery rule will apply to prevent Harrison's claims from being time-barred. Harrison sued the Rengers for breach of contract, breach of fiduciary duty, and fraud. In December of 1981, the Renger's executed a settlement agreement in which they acknowledged Harrison's nonparticipating royalty interest owner. Still, Renger and his successors continued to execute division orders omitting Harrison's interest. Because Harrison was on notice of his cause of action for unpaid royalty, we reach the same conclusion with regard to the claims against the Rengers. While a fiduciary duty does exist between the Rengers as the executive right holders and Harrison as the nonexecutive, this special relationship avails Harrison nothing because he knew or, in the exercise of reasonable diligence, should have known of his cause of action as of May 4, 1981.

By points two, three and four, Harrison complains of the judgment against him on his claims against Harvey Renger, Wayne Renger, and the Wayne Renger Trust. Harrison argues that these parties did not demonstrate their entitlement to summary judgment because they did not prove when the causes of action against them accrued. The Wayne Renger Trust began receiving royalties in December of 1983—a year and a half after May 4, 1981 when the evidence showed Harrison had notice of his claim against Bass. Harrison therefore argues that his causes of action against Wayne Renger and the trust could not have accrued a year and a half before any wrong occurred. For the same reasons as above, we hold that summary judgment against the Harrison's and in favor of Harvey Renger, Wayne Renger, and The Wayne Renger Trust were proper. We overrule points two through four.

Having overruled all of appellant's points of error, we AFFIRM the trial court's judgment.